IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The City of Myrtle Beach, | ) | C/A No.: 4:08-1183-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| United National Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.      Factual and Procedural Background

        This is a breach of contract/bad faith refusal to pay first party insurance benefits

action originally brought in state court and removed to this court based on diversity of

citizenship, 28 U.S.C. § 1332.  Plaintiff City of Myrtle Beach (the City) was a defendant

in an underlying lawsuit alleging, among other things, discrimination and civil rights

violations regarding its use of different traffic patterns and law enforcement presence

during what has been referred to as "Harley Week" and "Atlantic Beach Bikefest" (the

Underlying Suit).  According to its complaint, here the City incurred approximately

$675,000 in attorney's fees and costs defending the Underlying Suit from 2003 to 2006.

Pursuant to a reimbursement insurance policy or policies that defendant United National

Insurance Company (United) issued to the City, the City sought reimbursement of its fees

and costs during the course of the Underlying Suit.  After United failed to reimburse it,

the City filed this action in February 2008, asserting causes of action for breach of

contract and first party bad faith refusal to pay, seeking actual and punitive damages, attorneys' fees, and prejudgment interest.

This matter was referred to United States Magistrate Judge Thomas E. Rogers III for full pretrial and non-dispositive motions handling by order dated April 7, 2008 [Entry #5]. Judge Rogers handled many scheduling and discovery matters prior to the case being assigned to the undersigned on April 12, 2010 [Entry #64]. Pending on the docket are the following three motions: (1) the City's Third Motion [Entry #45]; (2) United's Motion for Attorneys' Fees [Entry #43]; and (3) United's Motion for Protective Order filed August 13, 2010 [Entry #83]. The court held a hearing on the first two motions on July 14, 2010, and took the matters under advisement. This order serves to memorialize the court's rulings on the motions.

For the reasons set forth herein, (1) the motion to compel is granted in part and denied in part, (2) the motion for attorneys' fees is granted in part and denied in part, and (3) the motion for protective order is denied.

II.     Discussion

        A.      The City's Motion to Compel

                1.      Factual and Procedural Background

The City served its interrogatories and request for production of documents on United on August 19, 2008, including a request for United's complete claims file. By email dated October 24, 2008, counsel for the City alerted counsel for United that its discovery responses were past due. After not receiving responses, the City filed a motion

to compel on October 30, 2008 [Entry #22]. United subsequently provided responses in which it claimed, inter alia, that the documents sought were either not relevant or protected from discovery by the attorney-client privilege and/or work product doctrine. On June 17, 2009, United provided a 53-page privilege log that identified documents in its files for which it asserted a privilege.

In response to the 53-page privilege log, the City filed its Second Motion to Compel on July 24, 2009 [Entry #32], on which Judge Rogers held a hearing on September 14, 2009. By order dated September 28, 2009 [Entry #41], Judge Rogers directed the parties to meet and confer regarding the privilege log, which he found failed to comply with Fed. R. Civ. P. 26 and which "clearly provides less than sufficient information from which a determination can be made as to the applicability of a privilege." The order provided that if the parties were unable to resolve the dispute, that United was to amend its privilege log to be in compliance with Fed. R. Civ. P. 26(b)(5)(ii) to allow the City and the court to properly evaluate the privilege asserted.

After the parties were unable to resolve the dispute, United provided an amended 12-page privilege log that the City received on October 14, 2009. Deeming the amended privilege log to be substantially the same as the original 53-page privilege log the court found to be inadequate, the City filed its Third Motion to Compel on October 21, 2009 [Entry #45], which is presently before the court.

According to the City, it requested reimbursement for its ongoing ultimate net losses from United in 2003, but United did not reimburse those losses, claiming various

reasons including the City's alleged failure to have adequate documentation of hours billed and alleged overcharges by the City's attorneys. Early in the litigation between the City and the NAACP, United retained outside attorneys to review bills from the City's attorneys and to communicate with the City on why United was not reimbursing the City for its expenses in a timely manner. Those same attorneys sent correspondence to the City's third party administrator and to the City in connection with United's position on its various reasons for not reimbursing the City and communicated to the City that the matter was primarily an equitable matter and that the City should receive only a portion of the amount of expenses it claimed. Those same attorneys communicated with United and its reinsurer in connection with the nature and merits of the Underlying Suit against the City, the amount of the expenses for which the City was seeking reimbursement, and their opinions on coverage issues. As a result of those communications, United and its reinsurer set reserves for their anticipated loss exposure for damages, but refused to reimburse the City for its expenses.

The Underlying Suit continued until February of 2006. From May 2003, through 2006, the City claims it spent a total of $637,503.15 defending itself in the Underlying Suit. The City argues its sought to be reimbursed for its ultimate net losses, but that during these years, United did not pay any money to the City, including losses that it did not dispute. According to the City, in December 2006, United made an offer to pay $309,110.53 to settle all the City's claims for ultimate net losses, which offer the City rejected. The City filed this action in February 2008 for breach of contract and bad faith

against United. A year later, in February 2009, United made an offer of judgment to the City in the amount of $425,148.77, which offer the City rejected. On May 1, 2009, United paid the City $346,734.41 with the explanation that the amount of approximately $215,000 claimed by the City from United was the only amount in dispute.

During the approximate six year period in which United refused to reimburse the City for any of its ultimate net losses, United retained two law firms to adjust the City's claims. United claims that all communications between it and those law firms are protected by the attorney-client privilege. United likewise has refused to produce any communications addressed either directly or through copies to its reinsurer.

After the hearing on the City's Motion to Compel, the court directed United to provide a complete set of the documents for which it claims a privilege for the court's in camera review. The court has reviewed the documents and has determined that some of the documents are properly discoverable.

2.    Analysis

Generally, parties in civil litigation enjoy broad discovery, as detailed in Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who knows of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). "[T]he discovery rules are given 'a broad and liberal treatment.'" Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc., 967 F.2d 980, 983 (4th Cir.1992) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). The discovery sought must be relevant, which means that the information sought must be "'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Hickman, 329 U.S. at 501.

It is against the backdrop of broad discovery that claims are privilege are evaluated. United claims the information withheld is protected by the attorney-client privilege by virtue of its communications with two law firms concerning the reimbursement of fees and costs to the City. United claims that it was retained as coverage counsel and was not involved in the defense and settlement of the Underlying Lawsuit, but instead: "sought to obtain the defense invoices supporting the City's claim for reimbursement; sought information about the experts whose fees were submitted for reimbursement; sought information about the settlement; and, attempted to negotiate a resolution of this coverage dispute with the City." It claims the work it performed has been in connection with the coverage dispute and in anticipation of the present coverage litigation. The City argues that the attorney-client privilege is not applicable in first-party bad faith claims because the insurer's thoughts and knowledge are central to the case.

Some courts have held that, in essence, the attorney-client privilege is not applicable in a case of bad faith. The Supreme Court of Ohio held that evidence of bad faith is not worthy of protection in a first party bad faith claim. Boone v. Vanliner

Insurance Company, 744 N.E.2d 154 (Ohio 2001)("in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage").[1] See also In re Bergeson, 112 F.R.D. 692, 697 (D. Mont. 1986)(applying Montana law); Silva v. Fire Ins. Exch., 112 F.R.D. 699 (D. Mont. 1986)(applying Montana Law). These opinions, in essence, find a per se waiver of privilege in a first-party bad faith action.

However, other courts have found no per se waiver of the attorney-client privilege on mere allegations of bad faith. Tackett v. State Farm Fire and Casualty Ins. Co., 653 A2d 254,260 (Del. 1995)(first requiring in camera inspection and recognizing a waiver of the privilege if the insurer relies on the advice of counsel defense); Squealer Feeds and Liberty Mutual Ins. Co., 530 N.W.2d 678 (Iowa 1995)(looking at the nature of the relationship of the parties – adversarial – rather than the nature of the claim); Clausen v. National Grange Mut. Ins. Co., 730 A.2d 133 (Del. Super. 1997)(must present factual basis adequate to support good faith belief materials establishing claim may be revealed through discovery); Palmer v. Farmers Ins. Exchange, 861 P.2d 895, 906 (Mont. 1993); Barry v. USAA, 989 P.2d 1172, 1176 (Wash. App. 1999)(underinsured motorist claim involved adversarial relationship); Ring v. Commercial Union Ins. Co., 159 F.R.D. 653 (M.D. N.C. 1995)(appears to reject blanket exception to the attorney-client privilege and require a prima facie case of bad faith before allowing discovery). The only exception to

---

[1] The Boone court limited its holding to pre-coverage denial. 744 N.E.2d at 158.

the attorney-client privilege recognized by the South Carolina Supreme Court includes communications in furtherance of tortious or fraudulent conduct. See Doster, infra.

The South Carolina Supreme Court recognized a cause of action for bad faith in an insurer's handling of a first party claim in Nichols v. State Farm Mutual Automobile Ins. Co., 306 S.E.2d 616, 619 (S.C. 1983). The court adopted the line of cases following Gruenberg v. Aetna Ins. Co., 510 P.2d 1032 (Cal. 1973) recognizing an "implied covenant of good faith and fair dealing that neither party will do anything to impair the other's rights to receive benefits under the contract." Nichols, 306 S.E.2d at 618. The bad faith claim is an action sounding in contract. See Diane Carter v. American Mut. Fire Ins. Co., 307 S.E.2d 227 (S.C. 1983); Brown v. South Carolina Ins. Co., 324 S.E.2d 641, n.4 (S.C. App. 1984). Therefore, a bad faith claim is available to an insured so long as there is a binding contract. See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 730 (S.C. 1996); Brown, 324 S.E.2d at 646.

South Carolina clearly recognizes a "special" relationship between an insurer and its insured. While it does not appear that South Carolina courts have qualified the relationship between an insurer and its insured as a fiduciary relationship,[2] see Pitts v. Jackson Nat. Life Ins. Co., 574 S.E.2d 502,507 (S.C. App. 2002), they clearly have characterized the relationship as "special."

---

[2] "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. Pitts v. Jackson Nat. Life Ins. Co., 574 S.E.2d 502 (S.C. App. 2002).

Also, South Carolina recognizes the public policy of promoting confidence in the secrecy of confidential disclosures made by the client within the attorney-client relationship.[3] State v. Doster, 284 S.E.2d 218 (S.C. 1981). As stated in Doster, however, the privilege is to be strictly construed. Id. at 219. Also, as set forth in Doster, "[n]ot every communication within the attorney and client relationship is privileged. The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice." Id. at 220. See also Ross v. Medical Univ. of South Carolina, 453 S.E.2d 880, 884 (S.C. 1994) (stating "privilege is not absolute" and citing language in Doster). The privilege does not extend to communications in furtherance of criminal tortious or fraudulent conduct. Doster, 284 S.E.2d at 220. Accordingly conflicting policies exist in a bad faith claim: The time-honored attorney-client privilege and the duty of good faith and fair dealing an insurer owes to its insured involving this "special" relationship. An insurer's thoughts and knowledge are at the center of a claim for bad faith. An insurance company sued for bad faith shall be judged by evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed. Howard v. State Farm Mut. Auto Ins. Co., 450 S.E.2d 582,584 (S.C. 1994).

---

[3]   The essential elements giving rise to the attorney-client privilege include (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." Doster, 284 S.E.2d at 219-220 (citing 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

Under South Carolina law, lack of waiver is a necessary element to establish the attorney-client privilege. Under South Carolina law, the waiver may be explicit or a waiver may be implied by making communications with counsel an issue. See Floyd v. Floyd, 615 S.E.2d 465,484 (S.C. App. 2005) (implied waiver of privilege by making communications with counsel an issue). However, a waiver must be "distinct and unequivocal." See State v. Thompson, 495 S.E.2d 437, 439 (S.C. 1998) (citing State v. Hitopoulus, 309 S.E.2d 747, 749 (S.C. 1983)).

The approach first espoused in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) sets forth a frame work that provides a balance between the two competing policies of attorney-client privilege and the administration of justice and is consistent with established South Carolina law. Additionally, the Hearn approach is the most widely accepted approach. See Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095 (7th Cir. 1987); Lee, 347 P.3d at 406 (extensive discussion of the differing approaches). The privilege is "intended as a shield, not a sword." GAB Business Services, Inc. v. Syndicate, 627, 809 F.2d 755, 762 (11th Cir. 1987). The undersigned finds there is no per se waiver of the attorney client privilege simply by a plaintiff making allegations of bad faith. However, if a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer voluntary waives, explicitly or impliedly, the attorney-client privilege. Lorenze, 815 F.2d at 1098. Thus, "voluntarily injecting" the issue is not limited to asserting the advice of counsel as an affirmative defense. A party's assertion of a new position of law or fact may be the basis of waiver.

As expounded by the Arizona Supreme Court in <u>State Farm Mut. Auto. Ins. Co. v.</u> <u>Lee</u>, 13 P.3d 1169 (Ariz. 2000), "if State Farm were merely asking its expert witness to evaluate the reasonableness of its conduct under the statutes, the case law, and the policy language, State Farm would not have put counsel's advice to the claims managers at issue; nor would Plaintiffs need to know what the claims managers actually believed . . . to prove that State Farm's position was not objectively reasonable." But "when a litigant seeks to establish its mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the action it took, then the extent of its investigation and the basis for its subjective evaluation are called into question."

Turning to the matter at hand, the City asserts that it has presented a prima facie case of bad faith. It claims evidence of bad faith can be shown from United's violations of South Carolina's Improper Claim Practices Act. See S.C. Code Ann. § 38-59-20; <u>Gaskins v. Southern Farm Bureau Cas. Ins. Co.</u>, 581 S.E.2d 169 (S.C. 2003). At the very least, the City claims it can present prima facie evidence that United engaged in unlawful claims practices of (1) knowingly misrepresenting to the City pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages, and (2) offering to settle claims for an amount less than the amount otherwise reasonably due or payable based upon the possibility or probability that the City would be required to incur attorneys' fees to recover the amount reasonably due or payable and unreasonable delay in reimbursement of amounts due. See S.C. Code Ann. § 38-59-20.

The City cites to the record for support that United and its counsel have given inconsistent facts and positions on which policy provisions applied to the City's claim. In July 2003, United employee Janet Brittingham wrote a reservation of rights letter stating United would cover the loss for the Underlying Suit under its comprehensive general liability policy. However, Ms. Brittingham changed her position a year later in August 2004 and stated the loss was covered under the public officials policy. The difference between the comprehensive general liability policy and the public officials policy is that the former does not include an express exclusion for equitable relief while the latter does. The only significant event that occurred between the reservation of rights letter and the e-mail was the South Carolina Supreme Court's decision of <u>Helena Chemical Co. v. Allianz Underwriters Ins. Co.</u>, 594 S.E.2d 455 (S.C. 2004), in which the court found that there was no distinction between equitable relief and compensatory damages in an insurance policy absent an express exclusion in the policy. Thereafter, United's attorneys claimed that it did not owe the City for equitable defense costs because equitable relief was expressly excluded from the policy in the public officials policy. That position was repeated in United's counterclaim and its answers to the Local Rule 26.03 Interrogatories filed in this lawsuit. When questioned about the change in policy coverage, Ms. Brittingham testified in her deposition that the communication stating the change to the public officials policy was "a mistake" and that the Underlying Suit had always been covered under the comprehensive general liability policy. She could not recall whether anyone else told her to notify the City of the change in policy coverage. The City

contends that such evidence shows United has engaged in misleading conduct designed to cause it to believe that equitable relief was expressly excluded from United's coverage.

Further, the City argues that United has not dealt with it in good faith as a first party insured in responding toits request for reimbursement of its ultimate net losses. The City claims that throughout the six years that United did not pay any money to it and continued to offer significantly less than what the City believes was due in an effort to force the City to settle the case. For example, in December 2006, United made an offer to pay $309,110.53 to settle all the City's claims for ultimate net losses. The City rejected that offer. In February 2009, United made an offer of judgment for $425,148.77 in full and complete settlement of all the City's claims. The City rejected that offer.

In May 2009, United actually paid what it considered to be the City's undisputed ultimate net losses by tendering a check in the amount of $346,734.41. Since that time, United has tried to narrow the scope of the City's claims in this action by repeatedly characterizing them to involve only the remaining $215,795.74 "disputed amount" the City incurred in defending the NAACP's motion for preliminary injunction/appeal and attendant settlement negotiations. However, the undersigned's review of the City's complaint, the briefing and the records in this case reveals the case is more properly viewed from the City's perspective as one for United's alleged breach of contract and bad faith in refusing and delaying payment and refusal to negotiate in good faith. When viewed through that lens, the documents sought in the City's first, second and third/instant motion to compel relating to the timing, delay, and reasoning behind

United's failure to reimburse the City are clearly discoverable under Fed. R. Civ. P. 26 and 34.

For the purposes of the motion to compel, the court finds that the City has presented a prima facie case of bad faith. United asserts that it does not rely on the advice of counsel as an affirmative defense and, therefore, there has been no waiver of its attorney-client privilege. As the proponent of the privilege, United has the burden of establishing the applicability of the privilege. In re Grand Jury Proceedings, 33 F.3d 342, 352 (4th Cir. 1994). Included within this task is the burden of establishing no waiver of the privilege. As discussed above, injecting issues of law or fact into the case can constitute an explicit or implied waiver. A review of the Answer to the Complaint filed by United reveals a number of defenses asserted in addition to the denial of the various factual allegations contained in the City's Complaint. Defenses asserted include, but are not limited to, that "United National and its representatives have acted reasonably and in good faith at all times herein and therefore Plaintiffs are barred from any recovery in this action"; preclusion of coverage for loss and expenses incurred in connection with claims for declaratory and injunctive relief; preclusion of coverage to the extent that the City failed to allocate loss payments and/or associated defense expenses between uncovered and covered claims; preclusion of coverage for lack of an "occurrence" or "intended and expected" injury; preclusion of coverage for reimbursement of defense expenses that are unnecessary or unreasonable; preclusion of coverage to the extent that the City failed to cooperate with United; and others. United argues that its role was not as a "claims

adjuster," but as coverage counsel. The City retorts that United's claims are contradicted by its claims adjuster Ms. Brittingham who testified the attorneys were acting in her place. Further, Ms. Brittingham testified that United retained the attorneys because of escalating expenses and because they wanted the attorneys to take out whatever might apply to declaratory injunctive relief. The attorneys also communicated with the third party administrator and directly with the City in connection with bills and adjustments.

The undersigned has reviewed each document submitted by United for in camera review. Many of the documents do not contain information ordinarily protected by the attorney-client privilege. To the extent that a document does contain information normally protected by the attorney-client privilege, United fails to meet its burden of establishing protection by failing to establish a lack of waiver. By asserting the defenses in its Answer, it has injected into this case the issues of law and fact contained in the documents for which it seeks protection. While this ruling amounts to a virtual per se waiver of the privilege in this case, this result is based on the facts and issues presented by United in its Answer and its failure to meet its burden as to the applicability of the privilege with this in mind. Therefore, the court grants the City's motion to compel as to the documents in Section 1 of 2 United provided for in camera review, specifically documents Bates-numbered 578–590, 624 (and subparts) – 626, 629–631, 635–658, 663, 669–671, 676, 678,–679, 682–683, 686–705, 708–714, 717–723, 732–749, 752–760, 763–765, 767–776. After the City reviews the documents United produces pursuant to this order, the court will entertain the City's request to conduct depositions or further

discovery out-of-time with respect to the information gleaned, if necessary. Such a request should be made by motion and filed by September 30, 2010, absent a request for an extension for good cause.

With respect to the documents in Section 2 of 2 United provided for in camera review relating to reinsurance and reserve information, the court finds that a showing of relevance for this information has not been made at this time. Therefore, the City's motion to compel is denied as to these documents Bates-numbered 598–628, 632–634, 659–668, 675, 677, 680–681, 715–716, 724–731, 766, 958-961, 982–983, 998, 1014–1039.

By consent of the parties, all communications identified on United's privilege log that post-dated the City's filing of this lawsuit on February 27, 2008, need not be produced.

For the foregoing reasons, the City's motion to compel [Entry #45] is granted in part and denied in part. Accordingly, United is directed to produce to the City unredacted copies of the Section 1 of 2 documents no later than September 8, 2010.

B.      United's Motion for Attorneys' Fees

1.      Background

As noted above, prior to the undersigned's involvement in this case, the parties filed several motions to compel discovery. Specifically, United filed motions to compel on October 29, 2008 [Entry #21] and on July 8, 2009 [Entry #31], and the City filed a motion to compel on October 30, 2008 [Entry #22] and on July 24, 2009 [Entry #32].

After briefing, Judge Rogers noticed a hearing for and heard argument on the four motions on September 14, 2009. On September 28, 2009 [Entry #41], he issued an order finding as moot United's motion to compel [Entry #21] and the City's motion to compel [Entry #22], and granted in part United's motion to compel [Entry #31] and the City's motion to compel [Entry #32]. Judge Rogers determined the City should pay United's costs and fees attributable to the City's motion to compel [Entry #32], noting that "[i]f United chooses to pursue these costs and fees, it shall submit its request and affidavit within fifteen (15) days of the date of this order." [Entry #41]  By motion dated October 13, 2009 [Entry #43], United sought reimbursement of $8,731.34 for its attorneys fees and costs allegedly attributable to the City's motion to compel.

The City filed an opposition to the motion for attorneys' fees, and the matter was referred to the undersigned by order dated April 12, 2010.  After reviewing the record and the briefs and considering the arguments of counsel, the court grants in part and denies in part the motion for attorneys' fees.

United's request for fees and costs may be categorized as follows:

| Attorney | Hourly Rate | # of Hours Billed | Total Cost |
|---|---|---|---|
| Catalina J. Sugayan | $395.00 | 7 | $2,765.00 |
| David M. Dolendi | $275.00 | 8.5 | $2,337.50 |
| Julie L. Simpson | $260.00 | 1.1 | $286.00 |
| Edward K. Pritchard | $200.00 | 15 | $3,000.00 |

**Fees/Disbursements**
Gas to Florence, hearing transcript and access to online court records:  $342.84

| **Total** | | **31.6** | **$8,731.34** |
|---|---|---|---|

Mr. Pritchard serves as local counsel. Ms. Sugayan has been admitted pro hac vice. Mr. Dolendi and ms. Simpson work in Ms. Sugayan's firm, but are not admitted pro hac vice. In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court considers the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978); Jackson v. Estelle's Place, LLC, 2010 WL 3190697. While the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990). Further, Local Rule 54.02(A)

provides that attorneys' fee petitions must comply with <u>Barber</u> "and shall state any exceptional circumstances and the ability of the party to pay the fee."

The court evaluates United's request for attorneys' fees in light of the foregoing authority.

### 2. Arguments of Counsel

#### a) The time and labor expended

The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate. <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984). When a party prevails on only some of the claims made, the number of hours may be adjusted downward. The number of hours must obviously be adjusted to delete duplicative or unrelated hours. The number of hours must be reasonable and must represent the product of "billing judgment." 461 U.S. at 437.

In Edward K. Pritchard's affidavit, which accompanied United's Request for Attorneys' Fees & Costs, he candidly states his invoices "are true and accurate reflections of all fees and expenses incurred in bringing United National's motion to compel and in defending the motion to compel of [the City]…hearings for both of which motions were held before The Honorable Thomas E. Rogers on September 14, 2009." <u>See</u> Pritchard Aff., ¶ 15.

The City contends that Mr. Pritchard's hours should be reduced to the actual amount of time attributable to the City's Motion to Compel. According to Mr. Pritchard, he is claiming a total time of 15 hours billed on all outstanding motions. Of the 15 hours,

Mr. Pritchard claimed 6.40 hours for attending a hearing he would have attended in any event because of United's then-pending Motion to Compel. He also claimed $155.65 for mileage and $186.15 for the cost of the transcript for the hearing. The remaining 8.6 hours claimed are for preparation for both the City's motions and United's motions. The City contends the 8.6 hours should be divided equally among the motions.

United's Chicago counsel also submitted fees for reimbursement, some of which included time for work on United's motion to compel. For example, the City highlights billing entries describing the services as: "Call with local counsel regarding mediation and City's Motion to Compel;" "Review City's Motion to Compel and Response to United's Motion to Compel and assess issues;" and "Study court order on Motions to Compel."

The City argues that the fees of Mr. Pritchard should be reduced to the amount of time attributable to the City's motion to compel. The City argues that the 6.40 hours claimed by Mr. Pritchard for attending a hearing in Florence, South Carolina should not be paid by the City because Mr. Pritchard would have been required to attend the hearing regardless of the City's motion to compel because of United's outstanding motion to compel. In the motion for attorneys' fees and costs, Mr. Pritchard claims he accurately stated his travel time, in addition to the time that he spent in Judge Rogers' courtroom. Mr. Pritchard does not agree that any of his time spent traveling or in the courtroom should be reduced.

The City further argues that the remaining hours claimed for the preparation of both the City's motions and United's motions should be divided equally among the motions. United disagrees and argues the attorney fees requested by Mr. Pritchard for defending the City's motion to compel are reasonable because he would have had to spend the same amount of time preparing to respond to the City's motion to compel regardless of the time spent in preparation for United's motion to compel. United further asserts that a close reading of the parties' motions and responses reveals that the material at issue was so intertwined as to be impossible to separate the time allocated to each motion. Therefore, United contends Mr. Pritchard should be awarded for the entire time he spent defending this matter, in addition to his costs.

b)    The results obtained

The City concedes the court allowed United to request attorneys' fees attributable to the City's motion filed July 29, 2009. However, the City asserts that in the same order the court found that United's privilege log was inadequate and permitted the City an opportunity to make a second Motion to Compel if necessary. The City contends some fee adjustment downward should be considered for the results actually obtained by United.

United argues that the court should not consider fee adjustment downward, because United obtained a favorable result and the court allowed it to request the attorneys' fees attributable to the City's motion filed on July 29, 2009. United disputes the City's argument that the fee should be adjusted downward because of the court's

ruling. United argues the court's order, which allows the City to file a motion to compel if the privilege log is not sufficient, does not negate the favorable result obtained by United. Moreover, initially the City requested costs and fees relating to its motion to compel, which was denied by the court and, instead, costs and fees were awarded to United. Therefore, United argues this factor weighs heavily in favor of awarding attorneys' fees and costs to counsel for United.

c)        The experience, reputation, and ability of the attorney

The City has no dispute in connection with the $200 hourly rate charged by Mr. Pritchard. The affidavits support his hourly rate. However, the City argues there is no support for the hourly rates charged by United's other counsel except a statement that the amount is customary for attorneys in Chicago, Illinois.

The party seeking recovery of attorneys' fees bears the burden of "[d]ocumenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The first step in setting a reasonable fee is determining the appropriate hourly rate." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). The reasonableness of the attorney's hourly rate is determined by the "prevailing market rates in the relevant community." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "The court must assess the experience and skill of the prevailing parties' attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Alexander S. v. Boyd, 929 F.Supp. 925,

935 (D.S.C. 1995). The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. <u>See National Wildlife Federation v. Hanson</u>, 859 F.2d 313 (4th Cir. 1988). Here, the applicable market rate is the prevailing rate for lawyers of comparable skill, experience, and reputation in South Carolina.

Ms. Sugayan appears to have comparable experience and skill to local attorney Mr. Pritchard. The City contends that her hourly rate should be adjusted to $200 per hour to meet the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. That rate equals the hourly rate United is paying Mr. Pritchard for his services in South Carolina.

United argues that although the starting point for selecting the proper rate is often the community in which the court sits, "[t]he complexity and specialized nature of a case may mean that no attorney, with required skills, is available locally." <u>National Wildlife Federal v. Hanson</u>, 859 F.2d 313, 317 (4th Cir. 1988) ((quoting <u>Chrapliwy v. Uniroyal, Inc.</u>, 670 F.2d 760, 768 (7th Cir. 1982) (internal citations omitted)). In <u>Chrapliwy</u>, the court set forth the following two questions to be asked in determining whether an exception to the general rule should be granted: (1) whether the services of like quality truly available in the locality where the services are rendered, and (2) whether the party choosing the attorney from elsewhere act reasonably in making that choice. <u>Id.</u> at 769. While United does not directly address the factors set out in <u>Chrapliwy</u>, it argues Ms.

Sugayan's law firm, Sedgwick, Detert, Moran & Arnold LLP is a specialized firm, which is extremely familiar with United, and thus, is very efficient with its time.

d)     Attorneys' fees awards in similar cases.

With regard to awards in similar cases, the City directs the court's attention to In re Mbakpuo, 52 F.3d 321 (Table), 1995 WL 224050 (4th Cir. 1995) (unpublished), which held the amount of $1,439.50 was a reasonable amount for attorneys' fees and costs for a motion to compel. United points to no authority or attorneys' fees awards in similar cases.

3)     Analysis

The parties do not address the remaining Barber factors.  The court notes that the issues addressed in defending this particular motion to compel were not of such a novel and difficult variety to require an attorney with a highly specialized practice.  Similarly, responding to motions to compel is a typical task for a litigation attorney, and generally does not require the type of specialized skill that justifies higher rates. It also does not appear that any unusual time limits were imposed on United in defending the motion to compel.  On the other hand, the court notes that United and its Chicago counsel have shared an ongoing professional relationship and that the Chicago counsel are intimately familiar with the facts in the underlying action. However, it is not clear this knowledge was necessary in defending the motion to compel at issue.

After considering all applicable Barber factors, the undersigned finds that an hourly rate of $200 is appropriate for Mr. Pritchard and United's Chicago counsel.  This rate is representative of the local market rate for defending a motion to compel and for

lawyers with a similar level of skill, experience, and reputation. The court is not persuaded that the defense of the motion to compel required specialized skill to justify a higher market rate.

From a review of the invoices, it is clear that United's Chicago counsel drafted the response to the City's motion to compel, using three lawyers, who spent time conferring with each other as well as editing and proofreading one another's work, for a total of 16.6 hours. The court finds that reimbursement for 10 hours to draft such a response is more than reasonable and appropriate considering the nature of the dispute and extent of the briefing. In addition, reimbursement for one attorney (Mr. Pritchard) to prepare for and attend the hearing in this matter is sufficient. Therefore, United is entitled to $2000 for reimbursement of its Chicago counsel, which represents 10 hours at a rate of $200/hour. United is also entitled to reimbursement for the time Mr. Pritchard spent preparing for and defending against the City's motion to compel at the hearing. Because Mr. Pritchard's billing entries include time spent preparing for both United's motion to compel and the City's motion to compel, United is not entitled to full reimbursement for his time. The court finds that United is entitled to reimbursement for 2.1 hours Mr. Pritchard spent preparing for the motions hearing on September 13, 2009, and half of the time he spent traveling to and attending the motions hearing on multiple motions. Therefore, United is entitled to reimbursement of $1060 for Mr. Pritchard's time, which represents 5.3 hours at an hourly rate of $200. Thus, in sum, United is entitled to reimbursement for $3060 for total attorneys fees spent defending the matter.

United is also entitled to half of the costs it spent for Mr. Pritchard's travel to the hearing on the motions, which equals $77.83. United is not entitled to the cost of the hearing transcript, as this was not used to defend against the City's motion to compel. Therefore, the court grants United's motion in part and finds that United is entitled to attorneys fees' of $3060 and $77.83 in costs for a total of $3137.83.

C.      Protective Order

Subsequent to the July 14, 2010 hearing, United filed a Motion for Protective Order on August 13, 2010 [Entry #83], in which it requests that the court: (1) enter an order postponing all discovery until there is a ruling on its motion for summary judgment; and (2) enter an order preventing the deposition of United's expert until a mutually agreeable time. Considering the representation of United's counsel that the expert deposition would be completed by the end of August 2010, the court views unfavorably United's untimely motion for protective order which forced the cancellation of its expert's deposition.

On July 14, 2010, the court granted the City's motion to extend the time for discovery to allow it to take the deposition of United's expert, over United's objection. During the course of the hearing, the court inquired when the deposition could be taken. At that time, the parties agreed to taking the deposition during August 2010, provided United's expert could attend. According to the City and undisputed by United, counsel for the City requested available August dates for the deposition by email on July 14, but received no response. On July 30, 2010, United's counsel indicated at the summary

judgment hearing before The Honorable Terry L. Wooten that United's expert was available in August for his deposition. When the City's counsel later contacted United's counsel for available August dates, he was told United's counsel was unavailable for the deposition until after October 25, 2010. Counsel for the City then noticed the depositions and served the subpoena on all counsel of record.

United has provided no basis for its request for a protective order, other than arguing that the motion currently before Judge Wooten could potentially dispose of the lawsuit. The potential of a motion to dispose of a lawsuit does not provide a basis for staying discovery. Furthermore, the court notes that all parties and the court were aware of the upcoming summary judgment hearing during the July 14, 2010 hearing when the undersigned granted the motion to extend the scheduling order to allow the expert discovery. At that time the parties discussed on the record and agreed, pursuant to the court's order, to attempt to proceed with the deposition in August. Despite this, United has provided no new information or circumstances which would justify staying the case or granting a protective order. United's motion is therefore denied and it is instructed to cooperate in scheduling the deposition of its expert as soon as it is feasible. The court directs the City to provide to United by September 3, 2010 five dates within the month of September 2010 which suit it to take the deposition of United's expert. United will choose from those five dates and make its expert available.

III.     Conclusion

For the foregoing reasons, (1) the City's Third Motion [Entry #45] is granted in part and denied in part; (2) United's Motion for Attorneys' Fees [Entry #43] is granted in part and denied in part; and (3) United's Motion for Protective Order filed August 13, 2010 [Entry #83] is denied.

IT IS SO ORDERED.

*Shiva V. Hodges*

August 27, 2010                                    Shiva V. Hodges
Florence, South Carolina                    United States Magistrate Judge